H. P. LANGFORD v. KING LUMBER & MANUFACTURING CO.

167 So. 817.
Division B.
Opinion Filed April 20, 1935.
On Rehearing May 13, 1936.

*L. O. Stephens* and *John B. Singeltary, H. H. Wells* and *B. K. Roberts,* for Plaintiff in Error;

*E. D. Treadwell, E. J. L'Engle, J. W. Shands* and *Edward McCarthy, Jr.,* for Defendant in Error.

TERRELL, J.—Defendant in error listed for sale with the plaintiff in error two tracts of land in DeSoto and Hardee Counties at a price of $50.00 per acre. The terms of sale were one-fourth cash and the balance in one, two, and three years, a commission of five per cent. to be allowed for making the sale. Plaintiff in error produced a buyer, the sale was consummated on the terms stated, and the cash payment was made.

Before the sale was made plaintiff in error engaged one, J. W. McCoy, to help him secure a buyer and promised to split commission with him. Through means not necessary to recite other parties became interested in the commission which amounted to $22,061.35, and from the cash payment made on the sale these parties were paid a total commission of $11,029.96. An instrument addressed to H. P. Langford and J. W. McCoy was given to evidence the balance, as follows:

"To H. P. Langford and J. W. McCoy: We hereby acknowledge that there is a balance due of $11,029.96 as commission on the sale of a tract of land which we own South of Kinsey to the G. M. & R. J. Development Co., which commission we hereby agree to pay when the G. M. & R. J. Development Co. makes full payment of the first maturing note which they gave to us as the balance of purchase price thereon with interest, and when same is paid

we agree to allow on same said commission the same rate of interest as the notes of the G. M. & R. J. Development Co. bears.

"King Lumber & Mfg. Company,
"By H. T. Davis, Sec. & Gen. Mgr.
"Arcadia, Florida, October 5, 1925.

"Arcadia, Florida, October 30, 1925.
"For value received I hereby assign to the DeSoto National Bank of Arcadia my share of the above commission.

"H. P. Langford."

In January, 1929, plaintiff in error as plaintiff below filed his declaration in seven counts seeking to recover the commission mentioned in the foregoing instrument. The first and second counts of the declaration seek recovery on defendant's promise to pay commission for producing a purchaser. The third and fourth counts are special counts predicated on the instrument as quoted. The fifth, sixth, and seventh counts are common counts. After much pleading not essential to detail here the case went to trial on a plea of payment and a plea of the general issue to each count of the declaration. There were also four special pleas to the fourth count and replications thereto all relating to the interest of J. W. McCoy in the transaction. The trial resulted in a verdict and judgment for the defendant, to which this writ of error was prosecuted.

This is the second appearance of this case here, 108 Fla. 463, 146 So. 588. The former writ of error was to a directed verdict for the defendant at the close of plaintiff's testimony.

It is first contended that the judgment below should be reversed because of irregular conduct of one of the jury-

men after retiring to the jury room, in that he represented himself to be conversant with the law of the case and that in his judgment the jury should return a verdict for the defendant.

The evidence of the alleged misconduct of said juror was offered in the form of an affidavit of a second juror who sat in the case, in support of plaintiff's motion for new trial. The said affidavit in substance asserts that in the judgment of the affiant the writing introduced in evidence and copied in the forepart of this opinion created a joint obligation to plaintiff and McCoy and that since McCoy was not a party to this cause judgment should be for the defendant.

Defendant objected to offering the affidavit but its objection was overruled. Admitting the contents of the affidavit to be true it fails to state a ground for new trial. It states nothing more than one juror's opinion of a single phase of the evidence and does not indicate that any member of the jury was influenced thereby. For all it shows every member of the jury had the same opinion. It contains nothing that may not appropriately take place in the deliberation of any jury and there was evidence in the record to support such a conclusion.

The weight of authority in this country supports the rule that a motion for new trial will not be granted when supported solely by the testimony of a single juror upon the ground that some member of the jury made an erroneous or improper statement or argument during their deliberation. Coker and Scheiffer v. Hayes, 16 Fla. 368; McMurray & Brittain v. Basnett, 18 Fla. 609; Kelly v. State, 39 Fla. 122, 22 So. 303; Mathis v. State, 63 Fla. 21, 58 So. 541; Turner, *et al.,* v. State, 99 Fla. 246, 126 So. 158; 27 R. C. L. 896.

An enlightening discussion of this subject will be found in Wigmore on Evidence (2nd Ed.) Vo. 5, pages 105 to 109, inclusive. It is there pointed out that there are two general classes of cases in which the admissibility of testimony of a juror concerning the proceedings in a jury room may arise, viz.: (1) Matters relating to the deliberations of the jury, where no illegal or formal misconduct is involved; (2) Matters relating to the formal misconduct of the jury. The latter class includes any illegal or improper conduct of the jury or any member of it.

It is also stated that as to matters falling in the first class the testimony of a juror is not admissible. As to matters falling in the second class under the doctrine of Lord Mansfield the testimony of a juror is not admissible. It is shown that Iowa and some other states refuse to follow the doctrine of Lord Mansfield. The question involved here falls in the first class and is not admissible. We express no opinion as to what we would say if it fell in class two.

The second question with which we are confronted turns on the interpretation of the evidence as to what sort of a sales agreement the parties hereto entered into.

The plaintiff contends that he had an unqualified agreement to produce a purchaser for defendant's land on terms of one-fourth cash, and the balance to be paid in one, two, and three years at a straight commission of five per cent. to be paid when the sale was consummated, while defendant admits the contract but contends that the commission was to be paid as the vendor collected from the buyer and that at plaintiff's request the terms of payment of the commission were so changed that half of it was paid when the sale was closed, the vendor agreeing in writing to pay the balance when the buyer's first note was paid.

The vendee's first note was not paid, so the vendor, re-

lying on his view of the contract, declined to pay the balance of the commission. The lands were turned back to the vendor. The evidence as to the terms of the agreement is in conflict but the jury found in favor of defendant's contention and the trial judge refused to disturb its finding. The evidence is ample to support the verdict of the jury and on careful examination of the record we find no reason to disturb it.

This Court and others have frequently approved contracts for the sale of real estate where conditions such as are involved here were attached to the payment of commissions on the sale. Ballas v. Lake Weir Light & Water Co., 100 Fla. 913, 130 So. 421; Murphy v. Green, 102 Fla. 102, 135 So. 531; Walker & McClelland v. Chancey, 96 Fla. 82, 117 So. 705; Cannon v. Selsmer, 85 Cal. App. 783, 250 Pac. 332.

The rule is also well settled that a reconveyance of lands previously sold by the vendee to the vendor because of inability to make deferred payments does not constitute a payment such as will entitle an agent to payment of conditional commissions. Murphy v. Green, *supra;* Cannon v. Selmser, *supra;* Norris v. Walsh, 71 Col. 185, 205 Pac. 276.; Wright v. Bowlus, 62 Mont. 322, 205 Pac. 210; Van Norman v. Fitchette, 100 Minn. 145, 110 N. W. 851; Simon v. Myers, 284 Pa. 3, 130 Atl. 256; Roach v. McDonald, 187 Ala. 64, 64 So. 823; Murray v. Rickard, 103 Va. 132; 48 S. E. 871; Trimue v. McCaleb, 172 Ark. 137, 287 S. W. 740.

In view of the conclusion we have reached as to the foregoing assignments it becomes unnecessary to discuss other questions raised.

The judgment below is accordingly affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.

DAVIS, J. (concurring).—I concur with this observation and reservation: I think evidence tending to prove illegal or formal misconduct by a jury in the jury room is admissible, should be considered by the trial judge, and if found of sufficient weight to cast doubt and suspicion upon the integrity of the jury's verdict, should cause the trial judge to summon before him every member of the participating jury and thereupon make rigid inquiry into whether or not the verdict has been so affected by illegal influences and misconduct as to require a new trial to be awarded in the interest of justice.

Courts and juries should be like Caesar's wife, not only pure in heart and mind in fact, but above the suspicion that anything to the contrary exists. If litigants realize that attempts to tamper with juries will result in a rigid inquiry into the matter and a setting aside of the fruits of the illegal tampering, they will not attempt it. Neither will corrupt minded jurors be tempted to violate their oaths behind the closed doors of the jury room, if they know that their misconduct can be enquired into and brought to light and punishment for it inflicted, not only upon the delinquent juror, but by depriving the prevailing party of the fruits of such juror's partisan minded attempt to pervert the course of true justice into an unjust verdict.

Recently this Court had before it a case wherein it was alleged that the foreman of a trial jury, after returning a verdict for one party, went to the attorney for the successful party and on the strength of the verdict he had returned, applied for a position of profitable employment with a dog race track of which the attorney for the successful party was a controlling influence in the dispensation

of jobs. Such incidents illustrate the absolute necessity of recognizing and preserving to the fullest extent the right of a trial judge to investigate all alleged misconduct of a jury, whether it occurs behind the closed doors of the secret jury room or not.

### ON REHEARING.

PER CURIAM.—This case is before us after rehearing and reargument granted pursuant to opinion filed herein on April 20, 1935.

The Court having reconsidered the case in the light of additional briefs filed and oral arguments presented, it is the judgment of the Court that the opinion and judgment originally entered should now be reaffirmed and it is so ordered.

Reaffirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.